**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Suzanne Wheeler; and Brenda J. Combs, | No. CV-06-2011-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| State of Arizona, Department of Corrections, | |
| Defendant. | |

Defendant has filed a motion for summary judgment. Dkt. #112. A response and reply have been filed. Dkt. ##127, 130. Oral argument was held on March 7, 2008. Dkt. #131. The Court will grant the motion in part and deny it in part.

**I.    Background.**

Plaintiffs Suzanne Wheeler and Brenda Combs worked as parole officers for the Mohave Regional Office of the Arizona Department of Corrections ("DOC"). Wheeler worked in Lake Havasu City office with parole officer Phil Bates. Combs worked in the Kingman office with parole officers Mark Hill and Bobby Blevins. Plaintiffs' immediate supervisor, Ed Lavallee, worked out of the Kingman office. Selina Sanders was a secretary in the Kingman office.

Plaintiffs' amended complaint asserts sex discrimination and retaliation claims against the DOC under Title VII of the Civil Rights Act of 1964. The discrimination claims include both disparate treatment and hostile work environment claims. Dkt. #4.

## II. Summary Judgment Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. The Disparate Treatment Claims.

### A. Are Some of the Claims Time Barred?

"A charge under [Title VII] shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). Plaintiffs' EEOC charges were filed on December 27, 2004. All disparate treatment claims arising out of acts that occurred before March 2, 2004 (300 days before December 27), are therefore time barred. *Id.*; *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred."); *Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002) ("We hold that appellants' pre-limitations period claims, based on the alleged discriminatory assignment of details, are time-barred for the reasons set forth by the Supreme Court in *Morgan*.").

The cases Plaintiffs cite in their response, including *Morgan* (Dkt. #127 at 8 n.3), merely stand for the proposition that a *hostile work environment claim* may be based on pre-filing period acts where at least one act contributing to the claim occurred within the filing period. *Morgan*, 536 U.S. at 117. At oral argument, Plaintiffs asserted the

1  "continuing violation" doctrine and urged the Court to "extend" *Morgan*'s rule regarding
2  hostile work environment claims to Plaintiffs' disparate treatment claims.  But *Morgan*
3  explicitly rejected such an application of the continuing violation doctrine.  *Id.* at 107-15.
4  "*Morgan* makes clear that claims based on discrete acts are only timely where such acts
5  occurred within the limitations period[.]"  *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th
6  Cir. 2003).  This Court is bound by *Morgan*.

7  Plaintiffs assert that the acts of which they complained constituted a "pattern of gender
8  discrimination[.]"  Dkt. #127 at 8 n.3.  But "[a] discriminatory practice, though it may extend
9  over time and involve a series of related acts, remains divisible into a set of discrete acts,
10 legal action on the basis of each of which must be brought within the statutory limitations
11 period."  *Lyons*, 307 F.3d at 1108; *see Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891-92
12 (9th Cir. 2005) ("'Discrete discriminatory acts are not actionable if time barred, even when
13 they are related to acts alleged in timely filed charges. . . .  The charge, therefore, must be
14 filed within the 300-day time period after the discrete discriminatory act occurred.'")
15 (quoting *Morgan*, 536 U.S. 113) (alterations omitted).

16 Plaintiffs further assert that the problems that existed at the Mohave Regional Office
17 "are emblematic of a systemic problem with the DOC."  Dkt. #127 at 9-10.  Plaintiffs note
18 that a former director of the DOC deemed the department's sexual harassment problem
19 "serious" in a newsletter to employees.  *Id.* at 9; Dkt. ##116 ¶ 97, 116-7 at 23.  But the
20 newsletter was issued in late 1996, nearly six years before the alleged harassment began in
21 this case.  Dkt. #124 ¶ 97; Dkt. #130-3.  This is insufficient to establish a "pattern or
22 practice" claim of gender discrimination.  *See Cherosky*, 330 F.3d at 1246-48 (claims
23 "properly analyzed under the 'pattern-or-practice' rubric" cannot be based on "'sporadic
24 discriminatory acts' but rather must be based on discriminatory conduct that is widespread
25 throughout a company or that is a routine and regular part of the workplace").

26 The Court will grant summary judgment on all disparate treatment claims based on
27 alleged acts of discrimination that occurred before March 2, 2004.  *See* 42 U.S.C. § 2000e-
28 5(e)(1); *Morgan*, 536 U.S. at 113; *Lyons*, 307 F.3d at 1108.  The time-barred claims include

Defendant's handling of Plaintiffs' internal DOC complaints and the February 2004 meeting with Parole Managers Ivan Harrison and Mary Keehl. *See* Dkt. #127 at 6-7. The time-barred claims also include the alleged discrimination with respect to lunch breaks, attendance at staff meetings, the monitoring of phone calls, and attempts to intimidate female employees. *See id.* at 13. Plaintiffs conceded at oral argument that they have presented no evidence of any such conduct occurring on or after March 2, 2004. *See Celotex*, 477 U.S. at 322.

**B.     Do the Timely Acts Constitute Adverse Employment Actions?**

Plaintiffs identify two timely acts of alleged discrimination: lowered performance evaluation ("PACE") scores and the segregation of the Kingman office. Dkt. #127 at 8.

**1.     Plaintiffs' PACE Scores.**

On March 4, 2004, Wheeler received an overall PACE score of 3.72 out of 5. Her overall PACE score for the preceding year was 4.60. Dkt. #116 ¶ 189. Combs received an overall PACE score of 3.48. She asserts that this score was lower than previous years. *Id.* ¶ 193.

This Circuit has made clear that "a performance evaluation that was mediocre (rather than 'sub-average') and that did not give rise to any further negative employment action [does] not violate Title VII." *Lyons*, 307 F.3d at 1118 (citing *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112-13 (9th Cir. 2000)). Plaintiffs' March 2004 PACE scores were not sub-average, and Plaintiffs' have presented no evidence that the scores led to negative actions. The scores therefore do not constitute adverse employment actions under Title VII. *See id.*

Because the alleged acts of discrimination against Wheeler are either time barred or do not constitute adverse employment actions, the Court will grant summary judgment on Wheeler's disparate treatment claim. The Court will grant summary judgment on Combs' disparate treatment claim to the extent it is based on her PACE scores.

**2.     Segregation of the Kingman Office.**

Lavallee segregated the Kingman office for two or three days in August 2004. Dkt. ##113, 116 ¶¶ 78; Dkt. #113-6 at 9. Combs was moved to the kitchen in the back of the office near Sanders. Hill and Blevins were moved to the other side of the office next to

- 4 -

1  Lavallee. Dkt. #116-3 at 15-17.

2  The Court doubts whether, even under this Circuit's broad definition of an adverse
3  employment action, *see Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000), the
4  temporary office reassignment was sufficiently disadvantageous to constitute a Title VII
5  violation. But Defendant has not sought summary judgment on this issue. *See* Dkt. #112.
6  Nor has Defendant addressed Combs' assertion that the segregation amounted to an adverse
7  employment action. *See* Dkt. #127 at 8, 15; Dkt. #130. The Court will therefore deny
8  summary judgment on Combs' disparate treatment claim to the extent it is based on the
9  segregation of the Kingman office. *Celotex*, 477 U.S. at 323 ("a party seeking summary
10 judgment always bears the initial responsibility of informing the district court of the basis for
11 its motion, and identifying those portions of [the record] which it believes demonstrate the
12 absence of a genuine issue of material fact.").

13 **IV.    The Retaliation Claims.**

14      **A.    Claims Based on Title VII's "Participation Clause."**

15 An employer may not discriminate against an employee because the employee
16 "participated in any manner in an investigation, proceeding, or hearing under [Title VII]."
17 42 U.S.C. § 2000e-3(a). Plaintiffs conceded at oral argument that Wheeler cannot maintain
18 a retaliation claim based on her participation in EEOC proceedings because she filed her
19 EEOC charge after she resigned. *See Silver v. KCA, Inc.*, 586 F.2d 138, 142-43 (9th Cir.
20 1978) ("Obviously, if a charge is not filed with the EEOC until after the discharge, the latter
21 cannot be motivated by a desire to retaliate for the former."); *see also EEOC v. Total Sys.*
22 *Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (holding that an employee's participation
23 in an employer's internal sexual harassment investigation was not activity protected by Title
24 VII's participation clause).

25 Combs claims that she was left alone in the Kingman office beginning in April 2006
26 in retaliation for having complained to the EEOC about sex discrimination. Dkt. ##116
27 ¶ 169, 116-13 at 21. But Combs has presented no direct evidence of a causal link between
28 her complaints and her being left alone in the Kingman office, and the fifteen-month period

1 between the filing of her EEOC charge and Defendant's decision to allow Combs to work
2 alone after Hill retired is simply too long to constitute sufficient circumstantial evidence of
3 causation to establish a prima facie case of retaliation. *See Clark County Sch. Dist. v.*
4 *Breeden*, 532 U.S. 268, 273-74 (2001) ("Action taken . . . 20 months later suggests, by itself,
5 no causality at all."); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.
6 2002) ("A nearly 18-month lapse between protected activity and an adverse employment
7 action is simply too long, by itself, to give rise to an inference of causation.").

8 The Court will grant summary judgment on all retaliation claims alleging violations
9 of Title VII's participation clause.

### B. Are Some of the Retaliation Claims Time Barred?

11 Title VII prohibits an employer from discriminating against an employee because
12 the employee "has opposed any practice made an unlawful employment practice under
13 [Title VII]." 42 U.S.C. § 2000e-3(a). Plaintiffs contend that Defendant discriminated
14 against them for making internal DOC complaints about sexual harassment and
15 discrimination. Dkt. #127 at 14-18. Defendant argues that the alleged acts of retaliation took
16 place outside the 300-day time limit for filing charges with the EEOC. Dkt. #112 at 7; *see*
17 Dkt. #127 at 8 n.3.

18 *Morgan* explicitly held that Title VII "precludes recovery for discrete acts of
19 discrimination *or retaliation* that occur outside the statutory time period." 536 U.S. at 105
20 (emphasis added). All retaliation claims arising out of acts that occurred before March 2,
21 2004, are therefore time barred. *See id.*; *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir.
22 2003) ("Because Manatt did not file the state complaint within 300 days of the transfer, her
23 retaliation claim is untimely under Title VII.") (citing 42 U.S.C. § 2000e-5(e)(1); *Morgan*,
24 536 U.S. at 105). These include Defendant's handling of Plaintiffs' internal complaints and
25 the February 2004 meeting with Harrison and Keehl. *See* Dkt. #127 at 16.

### C. Do the Timely Acts Constitute Materially Adverse Actions?

27 Plaintiffs identify their PACE scores and the segregation of the Kingman office as
28 materially adverse actions. Dkt. #127 at 8, 15. An action is materially adverse if "it well

might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006) (quotations omitted); *see Ray*, 217 F.3d at 1243.

### 1. Plaintiffs' PACE Scores.

Title VII's "anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm." *White*, 126 S. Ct. at 2414. Plaintiffs have presented no evidence that their *above-average* PACE scores caused them harm. The PACE scores therefore cannot constitute materially adverse actions. *See Kortan*, 217 F.3d at 1112-13 (holding that a mediocre evaluation did not violate Title VII where it did not give rise to any further negative employment action); *Lyons*, 307 F.3d at 1118 ("Our precedent dictates that the ['fully successful'] evaluations . . . do not rise to the level of an adverse employment action by the employer, and, as a result, [plaintiff] has failed to make out a *prima facie* case of unlawful retaliation.").

Plaintiffs' reliance on *Foraker v. Apollo Group, Inc.*, 427 F. Supp. 2d 936 (D. Ariz. 2006), and *Glass v. Intel Corp.*, No. CV 06-671-PHX-MHM, 2007 WL 2265663 (D. Ariz. Aug. 6, 2007), is misplaced. *Foraker* explicitly cited *Kortan* and *Lyons* for the proposition that mediocre evaluations do not constitute adverse actions. The plaintiff in *Glass*, unlike Plaintiffs in this case, received a "very negative evaluation" that led to a different position and the denial of a raise.

The Court will grant summary judgment on Wheeler's retaliation claims. The Court will grant summary judgment on Combs' retaliation claim to the extent it is based on her PACE scores.

### 2. Segregation of the Kingman Office.

The Court will deny summary judgment on Combs' retaliation claim to the extent it is based on the segregation of the Kingman office. Defendant has not argued or otherwise shown that the facts surrounding the segregation were such that a reasonable worker would not have been dissuaded from making or supporting a charge of discrimination. *See White*, 126 S. Ct. at 2409; *see also Celotex*, 477 U.S. at 323.

- 7 -

## V. The Hostile Work Environment Claims.

### A. Was the Harassment Because of Sex?

The Court rejects Defendant's contention that Lavallee's use of the word "bitch" does not show hostility toward women in the workplace. *See Pappas v. J.S.B. Holdings, Inc.*, 392 F. Supp. 2d 1095, 1104 (D. Ariz. 2005) (noting that the word "bitch" is "misogynistic"). Even if Lavallee's wife was not offended by his use of the word, as Defendant appears to contend, the evidence, construed in Plaintiffs' favor, shows that Lavallee referred to Wheeler as a "bitch" and "frequently referred to women as 'bitches' in general conversation." Dkt. #113-2 at 51; Dkt. #116-8 at 28.

Lavallee made other comments that were hostile toward women. Combs testified that Lavallee would "cuss her out" in front of other officers and parolees and did so because she is a woman. Dkt. #116-13 at 19. Combs also testified that Lavallee said "women drive him crazy." *Id.* at 14. When Lavallee learned a woman had been appointed Director of DOC in June 2003 he stated, in a sarcastic tone, "Oh, I cannot wait to see how this is going to work. You watch. People will start retiring and quitting." Dkt. #116-8 at 9, 29. When Lavallee took a phone call from a female DOC employee and was placed on hold he stated, "This is what I get for having to deal with women." Dkt. #116 ¶ 209.

These comments "overtly exhibit [Lavallee's] hostility to women in the workplace." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005); *see Pappas*, 392 F. Supp. 2d at 1103.

### B. Was the Harassment Unwelcome?

Defendant does not dispute that Wheeler was offended by the harassing conduct. Defendant contends that Combs welcomed the conduct because she often swore and sent sex-related jokes to coworkers. Combs testified that she was not offended by all use of profanity, but did take offense to the manner in which Lavallee used it. Dkt. #116-13 at 19. And, of course, Lavallee's use of profanity included the misogynistic word "bitch." Whether the harassment in this case was unwelcome is a jury question. *See Pappas*, 392 F. Supp. 2d at 1104; *see also Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir.

1999) ("Questions involving a person's state of mind are generally factual issues inappropriate for resolution by summary judgment.") (citation and alterations omitted).

### C. Was the Harassment Severe or Pervasive?

Relying on *Kortan*, Defendant contends that the hostile work environment claims fail because Plaintiffs' were not the targets of the alleged harassment. But the indirect nature of the harassment in *Kortan* was just one factor the court relied on in rejecting the plaintiff's claim. *Id.* at 1110-11.

In a recent decision, *Johnson v. Riverside Healthcare System, LP*, — F.3d —, 2008 WL 375214 (9th Cir. Feb. 13, 2008), the Ninth Circuit stated that "discriminatory conduct directed at an individual other than the plaintiff may be relevant to a plaintiff's hostile work environment claim in certain circumstances." 2008 WL 375214 at *4 (citations omitted). Those circumstances exist when the plaintiff personally witnessed the harassment rather than learning about it indirectly. *See id.* Consistent with *Johnson*, the Court will consider all sexually offensive comments heard by Plaintiffs even if such comments were not directed at them. *See id.*; *Dominguez-Curry*, 424 F.3d at 1036 ("[T]he district court erroneously disregarded evidence of discriminatory comments that [the supervisor] directed to other women in the division."); *Stingley v. Arizona*, 796 F. Supp. 424, 428 (D. Ariz. 1992) ("The abusive conduct which creates the hostile work environment need not be directed toward the plaintiff specifically.").

Because Plaintiffs have presented evidence that the harassment was because of sex, the Court will also consider evidence of non-sexual harassment directed at Plaintiffs. This Circuit has made clear that "there is no legal requirement that hostile acts be overtly sex- or gender-specific in content[.]" *EEOC v. Nat'l Educ. Ass'n*, 422 F.3d 840 (9th Cir. 2005); s*ee Pappas*, 392 F. Supp. 2d at 1104-05 ("Because Pappas has submitted some evidence of sexual epithets and hostility towards women in the workplace that, viewed in her favor, can be considered more than colorable, the other evidence of her tormentor's hostility towards her, such as the pranks and the ostracism, must be viewed . . . as part of the totality of circumstances surrounding Pappas' sex-based hostile work environment[.]").

- 9 -

**1.   Combs.**

Combs testified that "almost every day" the male officers in the Kingman office would brag about their sexual exploits, would joke with Lavallee about him bringing mistresses to the office, and would tease another officer about his wife's breast reduction surgery. Dkt. #113-4 at 36. Combs further testified that Lavallee would get in her face and "cuss her out," that the male officers were rude and unhelpful, and that Bates tried to be physically intimidating when he was in the Kingman office. *Id.* at 27-28. Combs' testimony is corroborated by Sanders' statement that Lavallee's profane remarks were a "daily occurrence" and that Lavallee and Hill did not like Combs and were "hateful and rude toward her." Dkt. #116-8 at 21-33.

This evidence, construed in Combs' favor, is sufficient to support a finding that the harassing conduct in the Kingman office was more than "'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  A reasonable woman could find the harassment sufficiently pervasive to alter the terms and conditions of employment and create an abusive work environment. *See Nat'l Educ. Ass'n.*, 422 F.3d at 847 ("Where the conduct in question was allegedly a 'daily thing,' there can be little question that a reasonable juror might infer that [the] pattern of verbal and physical intimidation . . . was sufficiently severe to satisfy [Title VII]."); *Ray*, 217 F.3d at 1245 ("Repeated derogatory or humiliating statements . . . can constitute a hostile work environment."). The Court will deny summary judgment on Combs' hostile work environment claim.

**2.   Wheeler.**

Wheeler, of course, worked in the Lake Havasu office. She was subjected to the hostile environment in the Kingman office during her visits there on approximately eleven occasions. Wheeler testified that on several of these occasions Hill called her "menopausal." Dkt. #113-3 at 24-25. She further testified that she was ostracized by the male officers in Kingman, isolated from Combs and Sanders, not given messages or informed about policy

changes, and that her phone calls were monitored. Dkt. #116-6 at 20, 48, 55-57.

Relying in part on *Manatt*, Defendant argues that the alleged harassment Wheeler was subjected to was not severe or pervasive enough to violate Title VII. *Manatt* involved two incidents of racial harassment specifically directed at the plaintiff. Significantly for this case, the plaintiff also overheard several racially offensive jokes and comments made by her coworkers and supervisor. The Ninth Circuit concluded that Manatt's hostile work environment claim failed because the "two regrettable incidents occurring over a span of two-and-a-half years, coupled with the other offhand remarks made by Manatt's co-workers and supervisor, did not alter the conditions of Manatt's employment." 339 F.3d at 799.

In this case, only Hill's "menopausal" comments were directed at Wheeler. The other offensive comments – including Lavallee's racial slurs – were overheard by Wheeler less than a dozen times over a span of ten months. Dkt. #113-3 at 8-11. Wheeler saw Lavallee's alleged mistress in the Kingman office only once. Dkt. #113-2 at 48.

The Court concludes that Wheeler, like the plaintiff in *Manatt*, was not subjected to a sufficiently severe and pervasive environment to constitute actionable harassment. The comments of Wheeler's "co-workers and supervisor – while offensive and inappropriate – did not so pollute [Wheeler's] workplace that it altered the conditions of her employment." *Manatt*, 339 F.3d at 798. The other acts of harassment – being ostracized, isolated, and monitored – are not severe enough to change this conclusion.

The cases Wheeler cites are inapposite. In *Dominguez-Curry*, the plaintiff's coworkers told sexually-explicit jokes every day and her supervisor made clear time and again, and in no uncertain terms, that he utterly despised women in the workplace. 424 F.3d at 1031-35. Wheeler was not exposed to such severe and pervasive harassment.

The plaintiff in *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001), unlike Wheeler, was "subjected to a relentless campaign of insults, name-calling, and vulgarities." *Id.* at 870. Only Hill's "menopausal" comments were directed at Wheeler, but those comments – while offensive and inappropriate – were not pervasive or severe enough to constitute a Title VII violation.

The plaintiff in *Pappas* was subjected to a continuous pattern of harassment, rudeness, and offensive conduct and comments by male coworkers over a six-month period. 392 F. Supp. 2d at 1098-1102. *Pappas* is distinguishable because Wheeler was not the direct target of a stream of highly offensive comments. The Court will grant summary judgment on Wheeler's hostile work environment claim.

## VI. Wheeler's Constructive Discharge Claim.

Because Wheeler has not "demonstrate[d] the severe or pervasive harassment necessary to support a hostile work environment claim, it [is] impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job.'" *Manatt*, 339 F.3d at 804 (citation omitted). The Court accordingly will grant summary judgment on this claim.

## VII. Conclusion.

The Court will grant Defendant's motion with respect to Wheeler's claims, deny the motion with respect to Combs' hostile work environment claim, and grant the motion with respect to Combs' disparate treatment and retaliation claims to the extent those claims are based on acts other than the segregation of the Kingman office.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. #112) is **granted in part and denied in part** as set forth in this order.
2. The Court will set a final pretrial conference by separate order.

DATED this 17th day of March, 2008.

_____
David G. Campbell
United States District Judge